**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
Joseph Lipari
Daniel Markowitz
Mindy Dolgoff
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
Sue J. Nam
Carlos F. Ramirez
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**DREYER BOYAJIAN LLP**
James R. Peluso
75 Columbia Street
Albany, New York 12210
Telephone: (518) 463-7784
Facsimile: (518) 463-4039

*Counsel for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ———————————————————— x | |
| Michael Motherway, individually and on behalf of all others similarly situated, : : : | Case No. 1:21-cv-229 (TJM/CFH) |
| Plaintiff, : | |
| v. : : | **CLASS ACTION** **COMPLAINT** |
| : | |
| Beech-Nut Nutrition Company, : : | **JURY TRIAL DEMANDED** |
| Defendant. : : : : : | |
| ———————————————————— x | |

Plaintiff, Michael Motherway (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Beech-Nut Nutrition Company (hereinafter "Defendant") with respect to the marketing and sales of Defendant Beech-Nut Nutrition Company's Beech-Nut Naturals, Beech-Nut Fruities, Beech-Nut Yogurt Melties, Beech-Nut Veggies, Beech-Nut, and Beech-Nut Organics product lines throughout the State of New York and throughout the country. The Beech-Nut Naturals, Beech-Nut Fruities, Beech-Nut Yogurt Melties, Beech-Nut Veggies, Beech-Nut, Beech-Nut Oatmeal, and Beech-Nut Organics products include the following products (hereinafter the "Products"):

- Beech-Nut Naturals Apple, Pumpkin & Cinnamon Stage 2 Pouch;
- Beech-Nut Naturals Banana, Apple & Blueberries Stage 2 Pouch;
- Beech-Nut Naturals Banana, Blueberries & Avocado Stage 2 Pouch;
- Beech-Nut Naturals Banana, Cinnamon & Granola Stage 2 Pouch;
- Beech-Nut Fruities Banana, Apple & Strawberries Stage 2 Pouch;
- Beech-Nut Fruities Peach, Apple & Banana Stage 2 Pouch;
- Beech-Nut Fruities Pear, Mango & Squash Stage 2 Pouch;
- Beech-Nut Fruities Apple, Mango & Carrot Stage 2 Pouch;
- Beech-Nut Fruities Apple, Sweet Potato & Pineapple Stage 2 Pouch;
- Beech-Nut Fruities Banana, Pear & Sweet Potato Stage 2 Pouch;

2

- Beech-Nut Fruities Apple, Peach & Strawberries Stage 2 Pouch;

- Beech-Nut Fruities Pear, Banana & Raspberries Stage 2 Pouch;

- Beech-Nut Naturals Fruit & Veggie Melties Apple & Pumpkin;

- Beech-Nut Yogurt Melties Strawberry, Apple & Yogurt;

- Beech-Nut Naturals Fruit & Veggie Melties Banana, Blueberry & Green Beans;

- Beech-Nut Yogurt Melties Sweet Potato, Mango & Yogurt;

- Beech-Nut Veggies Carrot, Zucchini & Pear Stage 2 Pouch;

- Beech-Nut Veggies Pumpkin, Zucchini & Apple Stage 2 Pouch;

- Beech-Nut Veggies Squash, Peas & Pear Stage 2 Pouch;

- Beech-Nut Veggies Zucchini, Spinach & Banana Stage 2 Pouch;

- Beech-Nut Breakfast Yogurt, Banana & Mixed Berry Stage 4 Pouch;

- Beech-Nut Breakfast Yogurt, Banana & Strawberry Stage 4 Pouch;

- Beech-Nut Naturals Baked Cheese Bites Mild Cheddar;

- Beech-Nut Naturals Baked Veggie Crisps Sweet Potato;

- Beech-Nut Naturals Fruity Oat Bars Banana;

- Beech-Nut Naturals Fruity Oat Bars Strawberry;

- Beech-Nut Naturals Fruit & Veggie Bars Banana & Pumpkin;

- Beech-Nut Naturals Fruit & Veggie Bars Apple & Spinach;

- Beech-Nut Macaroni + Beef + Vegetables;

- Beech-Nut Chicken Rice Dinner;

- Beech-Nut Vegetables + Chicken;

3

- Beech-Nut Beef + Beef Broth;

- Beech-Nut Chicken + Chicken Broth;

- Beech-Nut Turkey + Turkey Broth;

- Beech-Nut Oatmeal Whole Grain Baby Cereal;

- Beech-Nut Rice Single Grain Baby Cereal;

- Beech-Nut Multigrain Baby Cereal;

- Beech-Nut Organics Oatmeal Whole Grain Baby Cereal;

- Beech-Nut Naturals Apple & Kale Stage 2 Pouch;

- Beech-Nut Naturals Apple, Mango & Spinach Stage 2 Pouch;

- Beech-Nut Garden Vegetables Stage 2 Jar;

- Beech-Nut Green Beans Stage 2 Jar;

- Beech-Nut Mixed Vegetables Stage 2 Jar;

- Beech-Nut Peach Stage 2 Jar;

- Beech-Nut Pear + Pineapple Stage 2 Jar;

- Beech-Nut Pear + Raspberries Stage 2 Jar;

- Beech-Nut Pear Stage 2 Jar;

- Beech-Nut Squash Stage 2 Jar;

- Beech-Nut Sweet Carrots Stage 2 Jar;

- Beech-Nut Sweet Peas Stage 2 Jar;

- Beech-Nut Sweet Potato Stage 2 Jar;

- Beech-Nut Organics Apple, Raspberries & Avocado Stage 2 Jar;

4

- Beech-Nut Organics Butternut Squash & Sweet Corn Stage 2 Jar;

- Beech-Nut Organics Pear, Kale & Cucumber Stage 2 Jar;

- Beech-Nut Organics Sweet Potato & Barley Stage 3 Jar;

- Beech-Nut Apple + Banana Stage 2 Jar;

- Beech-Nut Apple + Blueberries Stage 2 Jar;

- Beech-Nut Apple + Mango + Kiwi Stage 2 Jar;

- Beech-Nut Apple + Pear + Banana Stage 2 Jar;

- Beech-Nut Organics Apple Stage 1 Jar;

- Beech-Nut Organics Carrots Stage 1 Jar;

- Beech-Nut Organics Pear Stage 1 Jar;

- Beech-Nut Organics Sweet Potato Stage 1 Jar;

- Beech-Nut Organics Prunes Stage 1 Jar;

- Beech-Nut Organics Pumpkin Stage 1 Jar;

- Beech-Nut Organics Apple, Cinnamon & Granola Stage 2 Jar;

- Beech-Nut Organics Apple, Pumpkin & Granola Stage 2 Jar;

- Beech-Nut Organics Banana, Cinnamon & Granola Stage 2 Jar;

- Beech-Nut Organics Banana, Mango & Sweet Potato Stage 2 Jar;

- Beech-Nut Organics Banana Stage 2 Jar;

- Beech-Nut Organics Apple, Kiwi & Spinach Stage 2 Jar;

- Beech-Nut Naturals Beet, Pear  & Pomegranate Stage 2 Jar;

- Beech-Nut Naturals Apple & Blackberries Stage 2 Jar;

5

- Beech-Nut Naturals Apple & Kale Stage 2 Jar;

- Beech-Nut Naturals Carrots, Sweet Corn & Pumpkin Stage 2 Jar;

- Beech-Nut Naturals Guava, Pear & Strawberries Stage 2 Jar;

- Beech-Nut Naturals Mango Stage 2 Jar;

- Beech-Nut Naturals Mango, Apple & Avocado Stage 2 Jar;

- Beech-Nut Naturals Pear & Blueberries Stage 2 Jar;

- Beech-Nut Naturals Peas, Green Beans & Asparagus Stage 2 Jar;

- Beech-Nut Naturals Pineapple, Pear & Avocado Stage 2 Jar;

- Beech-Nut Naturals Spinach, Zucchini & Peas Stage 2 Jar;

- Beech-Nut Naturals Sweet Corn & Green Beans Stage 2 Jar;

- Beech-Nut Naturals Apple Stage 1 Jar;

- Beech-Nut Naturals Banana Stage 1 Jar;

- Beech-Nut Naturals Butternut Squash Stage 1 Jar;

- Beech-Nut Naturals Carrots Stage 1 Jar;

- Beech-Nut Naturals Green Beans Stage 1 Jar;

- Beech-Nut Naturals Pear Stage 1 Jar;

- Beech-Nut Naturals Sweet Potato Stage 1 Jar;

- Beech-Nut Naturals Prunes Stage 1 Jar;

- Beech-Nut Naturals Apple, Pumpkin & Cinnamon Stage 2 Jar;

- Beech-Nut Naturals Apple, Cinnamon & Granola Stage 2 Jar;

- Beech-Nut Naturals Banana, Orange & Pineapple Stage 2 Jar;

6

- Beech-Nut Naturals Banana, Blueberries & Green Beans Stage 2 Jar.

2.     Caregivers like Plaintiff trust manufacturers like Defendant to sell food for babies/children that are nutritious, safe, and free from harmful toxins, contaminants, and chemicals.  Caregivers certainly expect that the food that they feed their infants and toddlers will be free from heavy metals, harmful toxins, and contaminants.

3.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products based upon their representations.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.     Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach its warranties regarding the Products.  Defendant fraudulently concealed material facts regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of himself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.     Consumers lack the scientific knowledge necessary to determine whether the Defendant's products contain heavy metals or to know or ascertain the true nature of the ingredients and quality of the Products.  Reasonable consumers therefore must and do rely

7

on Defendant to honestly report what its products contain.

6.      Defendant did not list heavy metals as an ingredient on its Products' labels, nor did it warn of the potential presence of toxic heavy metals in its Products.

7.      A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform reveals that caregivers' trust has been violated. Ex. 1. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendant, was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 1 at pg. 2.

8.      The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and ... that the manufacturers have often sold foods that exceeded these levels." Ex. 1 at pg. 4.

9.      The investigation found that, when baby food manufacturers were left to self-regulate and establish their own heavy metals standards, they routinely failed to abide by their own standards. Ex. 1.

10.      The Subcommittee also revealed that baby foods are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury." Ex. 1 at pg. 2.

11.      The Subcommittee's investigation has found that baby food manufacturers are selling baby food with higher levels of lead than what is allowed by existing standards for water,

8

juice, and candy. Ex. 1 at pg. 22.

      12.    Defendant's egregious lack of quality control led to the following findings by the Subcommittee:

        a.    Defendant did not test its finished products, only its ingredients.  That policy endangers babies and children and prevents the companies from even knowing the full extent of the danger presented by their products. Ex. 1 at pgs. 22, 56, 57;

        b.    Defendant used ingredients in its baby foods with as much at 913.4 ppb arsenic; Defendant routinely used ingredients that exceeded 300 ppb total arsenic; Defendant unnecessarily uses high-arsenic additives to address issues like "crumb softness."  Ex. 1 at pg. 17;

        c.    Defendant only tested arsenic content in its ingredients, not its final product.  The Subcommittee has determined that Defendant used ingredients containing as much as 913.4 ppb arsenic.  Test results show that Defendant used at least fourteen other ingredients containing over 300 ppb arsenic, and it used at least 45 ingredients containing over 100 ppb arsenic.  Ex. 1 at pg. 17;

        d.    Defendant used ingredients containing as much as 886.9 ppb lead.  It used many ingredients with high lead content, including 483 that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead.  Ex. 1 at pg. 3;

9

e.    Defendant tested and used 57 ingredients that contained over 20 ppb lead, the EU's lax standard for lead in infant formula.  Defendant accepted 89 ingredients that tested at or over 15 ppb lead, EPA's action level for drinking water, and 483 ingredients that tested at or over 5 ppb lead, FDA's standard for lead in bottled water.  Ex. 1 at pg. 23;

f.    Defendant used 105 ingredients that tested over 20 ppb cadmium. Some tested much higher, up to 344.55 ppb cadmium.  Ex. 1 at pg. 3

g.    Defendant used 20 ingredients registering over 100 ppb cadmium, including cinnamon containing 344.5 ppb cadmium - more than 17 times higher than the EU's lax upper limit on cadmium in baby food.  At least 105 ingredients that Defendant tested and used in baby foods registered at or over 20 ppb cadmium—the EU's lax infant formula upper limit.  Ex. 1 at pgs. 29-30;

h.    Defendant did not even test for mercury in baby food.  Ex. 1 at pg. 4;

i.    Defendant set internal arsenic and cadmium standards at 3,000 ppb in additives, such as vitamin mix, and 5,000 ppb lead for certain ingredients like BAN 800.  These standards are the highest of any responding manufacturer in the report.  Ex. 1 at pg. 4;

j.    Defendant's standard far surpasses any existing regulatory standard in existence and toxic heavy metal levels for any other baby food manufacturer that responded to the Subcommittee's inquiry.  As a result of

10

adopting high internal standards, Defendant has used ingredients containing 710.9, 465.2, and 401.4 ppb arsenic.  Defendant also set internal guidelines of 3,000 ppb for cadmium and 5,000 ppb for lead for certain ingredients. Ex. 1 pgs. 37-38;

k.   Defendant's explanation of why it accepted products over its own internal limits was that it did so "rarely" and the ingredients were "generally restricted to a 20% variance of BNN's allowable limits...."  However, as the cadmium examples show, Defendant accepted certain ingredients in spite of their own testing results which showed that they contained over 20% more cadmium than their already-high internal limit.  Defendant's internal limit for cadmium in dehydrated potato appears to be 90 ppb.  A 20% variance would permit Defendant to accept dehydrated potato containing up to 108 ppb cadmium.  Nevertheless, Defendant accepted three shipments of dehydrated potato containing cadmium in excess of its 20% variance allowance.  Defendant did not offer any explanation. Ex. 1 at pg. 39.

13.   In its conclusion, the Subcommittee stressed the danger associated with the presence of heavy metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers.   Manufacturers knowingly sell these products to unsuspecting caregivers, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 1 at pg. 59.

11

14. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

15. Even after they were fully aware, Defendant still willfully failed to warn Plaintiff and the Class of the elevated levels of toxic heavy metals in the Products.

16. Defendant also knows that consumers, such as Plaintiff and the Class, are unwilling to purchase baby food that contain elevated levels of toxic heavy metals.

17. Defendant knew that if the elevated levels of toxic heavy metals in their respective brands of baby food was disclosed to Plaintiff and Class members, then Plaintiff and Class members would be unwilling to purchase the Products.

18. Defendant has thus violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to its knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

19. Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

12

20.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

21.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

a.     Paid a sum of money for Products that were not what Defendant represented;

b.     Paid a premium price for Products that were not what Defendant represented;

c.     Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

d.     Were deprived of the benefit of the bargain because the Products t they purchased had less value than what Defendant represented;

e.     Ingested a substance that was of a different quality than what Defendant promised; and

f.     Were denied the benefit of the beneficial properties of the natural foods Defendant promised.

22.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased.

23.     Plaintiff and the Class members all paid money for the Products; however, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Beech-Nut Nutrition Company is a citizen of the State of New York; more than two-thirds of the class members reside outside the State of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

25.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

26.     Venue is proper because many Class Members reside in the Northern District of New York, and throughout the State of New York, an because Defendant is headquartered in the Northern District of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

27.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff purchased the Products during the Class Period.  The packaging of the Products Plaintiff purchased did not contain the representation that the Products contained harmful contaminants and heavy metals. If the Products actually were free of harmful contaminants and heavy metals, Plaintiff would purchase the Products in the immediate future.

28.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Products, Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for the Products than he would have had he known the truth about the Products.  The Products Plaintiff received were worth less than the Products for which he paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### Defendant

31.     Defendant Beech-Nut Nutrition Company is a corporation with its principal place of business in Amsterdam, New York.  Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

15

## CLASS ALLEGATIONS

32.    Plaintiff brings this matter on behalf of himself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

33.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

34.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

35.    The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

36.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

37.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

38.   <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.   Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

e.   Whether Plaintiff and the Class are entitled to injunctive relief; and

f.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

39.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

40.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

41.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

42.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

   a.     The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

   b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

   c.     When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far

18

less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.     It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products.

43.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

44.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.  Plaintiff would purchase the Products again if the ingredients were changed.

45.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.   Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

b.   Commonality: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

20

     i.   Resolution of the issues presented in the 23(b)(3) class;

    ii.   Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

    iii.   Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products?

c.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because his claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, he purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d.   <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  His consumer protection claims are common to all members of the injunctive Class and he has a strong interest in vindicating his rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

46.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive

labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Products.  Plaintiff would purchase the Products again if the ingredients were changed.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

47.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

48.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

49.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

50.     There is no adequate remedy at law.

51.     Defendant misleadingly, inaccurately, and deceptively advertise and market its Products to consumers.

52.    Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

53.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were contrary to Defendant's representations. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

54.    Defendant's advertising and Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

55.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

56.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

57.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

58.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

59.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

60.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent the Products.

61.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were contrary to Defendant's representations.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

24

62.    Defendant's advertising, packaging, and products' labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

63.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

65.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

66.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.   Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

67.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

68.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.    Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact.

25

70.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

71.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

72.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

73.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of himself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

74.     Defendant breached the express warranty because the Products contain heavy metals and contaminants.

75.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq*.**
**(On Behalf of Plaintiff and All Class Members)**

76.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

26

77.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

78.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

79.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

80.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

81.     Defendant are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

82.     Defendant did not represent in writing that the Products contained heavy metals and contaminants.

83.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

84.     As alleged herein, Defendant breached the written warranty by selling consumers Products that contain heavy metals and contaminants.

85.     The Products do not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiff and All Class Members)

86.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.     Defendant concealed and failed to disclose the material fact the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

88.     Defendants had knowledge that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

89.     Defendants had a duty to disclose that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

90.     Defendants had superior knowledge or means of knowledge available to them and knew that Plaintiff and the Class would rely upon the representations and omissions of Defendant regarding the quality of its products.  Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains elevated levels of toxic heavy metals, especially at the point of sale.

91.     Defendant's concealment was material and intentional because caregivers are concerned with what they are feeding to the children in their care.  Caregivers are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy and feed to the children in their care.  Defendant knows that if it had not omitted that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all) and Defendant wanted to increase sales/profits.

92.     Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and feeding to children.

93.     Defendant fraudulently concealed that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

94.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

95.     Plaintiff, on behalf of himself and consumers nationwide, brings a claim for unjust enrichment.

96.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

97.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

98.     Plaintiff and Class Members conferred significant financial benefits and paid

30

substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

99.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

100.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Enjoining Defendant from continuing its unlawful practices described herein;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 26, 2021

                           Respectfully submitted,

                           **THE SULTZER LAW GROUP P.C.**

By:   */s/ Jason P. Sultzer*
        Jason P. Sultzer
        Joseph Lipari
        Daniel Markowitz
        Mindy Dolgoff
        85 Civic Center Plaza, Suite 200
        Poughkeepsie, New York 12601
        Telephone: (845) 483-7100
        Facsimile: (888) 749-7747

        **REESE LLP**
        Michael R. Reese
        Sue J. Nam
        Carlos F. Ramirez
        100 West 93rd Street, 16th Floor
        New York, New York 10025
        Telephone: (212) 643-0500
        Facsimile: (212) 253-4272

        **DREYER BOYAJIAN LLP**
        James R. Peluso
        75 Columbia Street
        Albany, New York 12210
        Telephone: (518) 463-7784
        Facsimile: (518) 463-4039

        *Counsel for Plaintiff and the Class*

32